UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KIMBERLY STARLING, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ONPROCESS TECHNOLOGY, INC. and AT&T SERVICES, INC.,<br><br>Defendants. | Case No.: 1:23-cv-10949 |

**DEFENDANT AT&T SERVICES, INC.'S CONSOLIDATED RESPONSE IN OPPOSITION TO PLAINTIFF'S (1) MOTION FOR PRELIMINARY INJUNCTION AND (2) MOTION FOR A TEMPORARY RESTRAINING ORDER**

In accordance with this Court's March 14 Electronic Order (Dkt. 75), Defendant AT&T Services, Inc. ("AT&T"), submits this consolidated response in opposition to Plaintiff Kimberly Starling's: (1) Motion for Preliminary Injunction and for Expedited Summary Determination and Permanent Injunction to Enjoin Defendant from Pursuing Arbitration (Dkt. 82) ("Injunction Motion"); and (2) Motion for a Temporary Restraining Order (Dkt. 84) ("TRO Motion," collectively with the Injunction Motion, the "Motions").

**INTRODUCTION**

Two months after AT&T filed its Motion to Stay Pending Arbitration (Dkt. 64) ("Motion to Stay"), Ms. Starling filed these expedited Motions, claiming she urgently needs the Court to enjoin that arbitration. As AT&T explained in its Motion to Stay and Reply (Dkt. 77) ("Reply"), equitable estoppel principles bind Ms. Starling to the arbitration agreement within the Consumer Service Agreement ("Agreement") that she exploited to manufacture an illegitimate TCPA claim against AT&T. Ms. Starling's Motions merely incorporate the arguments she made in her

Opposition to AT&T's Motion to Stay (Dkt. 72) ("Opposition") and make no effort to address any of the arguments that AT&T made in its Reply. And both Motions fall short of satisfying the rigorous criteria necessary for an injunction against a pending arbitration.

AT&T commenced arbitration against Ms. Starling and her sister Kelly Pinn because they exploited the Agreement to manufacture an illegitimate TCPA claim against AT&T. The Court should deny Ms. Starling's Motions and grant AT&T's Motion to Stay.

## BACKGROUND[1]

Ms. Starling's Amended Complaint alleges that Defendant OnProcess Technology, Inc. ("OnProcess") placed prerecorded telephone calls on AT&T's behalf to Ms. Starling's cell phone number without her consent and in violation of the TCPA. It is undisputed that Ms. Starling's phone number was listed as an "alternative" contact number for the AT&T account belonging to her sister, Ms. Pinn, at the time of these calls. *See* Decl. of Dennis Nenninger ISO OnProcess's Mot. to Compel Arbitration (Dkt. 28-1) ("First Nenninger Decl.") ¶ 9; Am. Compl. (Dkt. 47) ¶ 72. It also is undisputed that Ms. Pinn is bound to the Agreement and its broad arbitration provision, which requires arbitration of "all disputes and claims" between the parties, including "claims arising out of or relating to any aspect of the [parties'] relationship." Decl. of Dennis Nenninger ISO AT&T's Mot. to Stay (Dkt. 66) ("Second Nenninger Decl."), Ex. G (Agreement) § 1.3.2.1. Finally, it is undisputed that Ms. Starling and Ms. Pinn are serial TCPA plaintiffs who, along with Ms. Starling's husband, have collectively filed dozens of TCPA claims over the last four years. *See* Decl. of Jeffrey Fisher ISO AT&T's Opp. to Pl.'s Mots. ("Third Fisher Decl.") ¶¶ 4–6 (collecting cases). In 2021 alone, Ms. Starling sent 60 TCPA demand letters and made

---

[1] AT&T fully incorporates its Memorandum in Support of its Motion to Stay (Dkt. 65) ("Mem. ISO Mot. to Stay") and Reply (Dkt. 77), but summarizes pertinent portions in this brief.

over $50,000 from TCPA settlements—her main source of income that year. *See* AT&T's Mem. ISO Mot. to Stay, Ex. A (Dkt. 65-1), at 3–4.

Ms. Starling argues that Ms. Pinn did not provide AT&T with Ms. Starling's number and that, instead, Ms. Pinn's ex-husband provided AT&T with the phone number belonging to his ex-sister-in-law, Ms. Starling, as an alternative contact for Ms. Pinn's account. *See* Opp., at 8. Setting aside that this theory makes no sense, AT&T's records show that Ms. Pinn changed the alternative contact phone number for her AT&T account to Ms. Starling's phone number, ending in 6140, on October 26, 2020. *See* First Nenninger Decl. ¶ 9. The following are screenshots of AT&T's records showing this change to Ms. Pinn's account:

| Time | User | Action |
|---|---|---|
| 10/26/2020 5:17:41 PM | sa | Modify Contact |
| 10/26/2020 5:15:10 PM | sa | Customer changed CBR. Customer changed ALT CBR. |
| 10/26/2020 5:15:10 PM | sa | Modify Contact |

| # | NM_ADDR_ROL_DESC | ACCT_ADDR_EFF_DT | ACCT_ADDR_END_DT | PHONE_NBR |
|---|---|---|---|---|
| 1 | Contact Phone | 2019-06-30 | 2019-10-21 | 2161 |
| 2 | Alternate Phone | 2019-09-17 | 2019-12-05 | 0002 |
| 3 | Contact Phone | 2019-10-21 | 2020-10-26 | 9418 |
| 4 | Alternate Phone | 2019-12-05 | 2020-10-26 | 2161 |
| 5 | Alternate Phone | 2020-10-26 | 2023-02-09 | 6140 |
| 6 | Contact Phone | 2020-10-26 | 9999-12-31 | 2161 |
| 7 | Alternate Phone | 2023-02-09 | 9999-12-31 | 1602 |

*Id.*, Ex. 7 (highlighting added).

But even assuming Ms. Pinn did not initially change her contact information—which it appears she did—AT&T's records show that Ms. Pinn *confirmed* the alternative phone number for Ms. Pinn's account (Ms. Starling's number) on April 15, 2023, and January 1, 2024, both of which predate the calls at issue. *See* Decl. of Dennis Nenninger ISO AT&T's Opp. to Pl.'s Mots. (the "Third Nenninger Decl.") ¶ 3, Ex. A. The following is a screenshot of AT&T's records showing Ms. Pinn's multiple confirmations of that alternative contact number:

| | | |
|---|---|---|
| 1/3/2023 3:19:55 PM | gj156m | CBR Confirmed |
| 1/3/2023 3:19:55 PM | gj156m | Alt CBR Confirmed |
| 4/15/2021 3:36:02 PM | kw834b | CBR Confirmed |
| 4/15/2021 3:36:02 PM | kw834b | Alt CBR Confirmed |

*Id.*, Ex. A (highlighting added). And Ms. Pinn does not directly deny that she added Ms. Starling's phone number to her AT&T account, but instead claims that she does "not recall." *See* Decl. of Kelly Pinn ISO Pl.'s Opp. (Dkt. 72-3) ¶ 11.

Ms. Pinn requested cancellation of her AT&T services in January 2023, after which both Ms. Pinn and Ms. Starling received calls requesting the return of AT&T's equipment. *See* Decl. of Kimberly Starling ISO Pl.'s Opp. (Dkt. 72-2) ("Starling Decl.") ¶¶ 11–39; Second Decl. of Kelly Pinn ISO Pl.'s Opp. (Dkt. 72-4) ¶¶ 3–7. Seeing an opportunity to create a TCPA claim, Ms. Starling engaged in a multi-day, multi-call effort to determine the caller's identity. *See* Starling Decl. ¶¶ 11–64; Am. Compl. ¶¶ 44–69. After receiving the first call, Ms. Starling searched for the phone number online; read reports claiming the number was "associated with a scam"; called the number back three separate times; discovered that the calls were related to her sister's AT&T account; and then left a voicemail with the caller *asking* for a callback. *See* Starling Decl. ¶¶ 11–36. When Ms. Starling finally received a callback, she misrepresented her identity by pretending to be her sister; simultaneously texted with her sister to gather account information to further the pretext; and spoke with the OnProcess representative at length about returning the AT&T-owned equipment (which equipment Ms. Starling had no intention of returning because it was not in her possession). *See id.* ¶¶ 37–64; Decl. of Dana Keeling (Dkt. 28-3). Ms. Starling deliberately concealed her identity, made affirmative misrepresentations, and omitted material facts, all in furtherance of a potential TCPA claim.[2]

---

[2] Ms. Starling focuses on an account number mix-up that appears to have occurred during the OnProcess call and has no bearing on these issues. *See* Pl.'s Mem. ISO Injunction Mot., at 3; Pl.'s TRO Mot., at 3. Ms. Pinn's former AT&T account with her ex-husband, ending in 5516, remained associated in AT&T's systems with Ms. Pinn's new account, ending in 3200, which

Ms. Starling first brought this purported class action against only OnProcess, alleging a TCPA violation based on these phone calls. Dkt. 1. OnProcess moved to compel arbitration by arguing that AT&T's arbitration provision (to which OnProcess was not a signatory) applied to Ms. Starling based solely on agency principles. Dkt. 28 at 8–11. The Electronic Order denying OnProcess's motion to compel did not address whether signatory AT&T could enforce its own arbitration agreement against Ms. Starling, nor did it address whether Ms. Starling was bound by the arbitration agreement under equitable estoppel (as opposed to agency) principles as to any claims she might assert against AT&T. *See* Dkt. 35. Instead, the Court addressed the agency argument raised by nonsignatory OnProcess, concluding that "Pinn's designation of Starling's phone number, ending in 6140, as an alternate contact number on her AT&T account does not imply Pinn consented to Starling acting on her behalf." *Id.* Soon after the Court denied that motion, Ms. Starling amended her complaint to add AT&T as a defendant. *See* Am. Compl.

Based on the unusual and suspicious circumstances surrounding this lawsuit, AT&T initiated the Agreement's arbitration process against both Ms. Starling and Ms. Pinn on January 18, 2024, by sending Notices of Dispute to both sisters. *See* Decl. of Jeffrey Fisher ISO AT&T's Mot. to Stay (Dkt. 67) ("First Fisher Decl.") ¶¶ 3–4, Exs. A–B. AT&T's Notices of Dispute explained AT&T's claim that Ms. Starling and Ms. Pinn conspired to use Ms. Pinn's AT&T account to create an illegitimate TCPA claim against AT&T, further noting that the sisters' history of prolific TCPA litigation lends credibility to AT&T's claim. *Id.*; *see also* AT&T's Mem. ISO Mot. to Stay, Ex. A (Dkt. 65-1), at 13–17 (Ms. Starling testifying under oath in another TCPA action that she purchases products she does not want in order to identify potential

---

was the subject of the call. *See* Third Nenninger Decl. ¶ 4. The nature of this association may have been unclear to the OnProcess agent who spoke with Ms. Starling that day.

TCPA defendants); *id.* at 24–26 (Ms. Pinn testifying under oath that she and Ms. Starling celebrate upon receiving "robocalls"); *id.*, Ex. B (Dkt. 65-2) (complaint against Ms. Starling alleging that she engaged in a "fraudulent and illegal scheme" to create TCPA violations). The day after sending those Notices of Dispute, AT&T filed its Motion to Stay. Dkt. 64.

Ms. Starling filed her Opposition on February 2, 2024 (Dkt. 72), and AT&T filed its Reply on February 16 (Dkt. 77). In its Reply, AT&T pointed out that, to enjoin the arbitration, Ms. Starling was required to move for an injunction. AT&T's Reply ISO Mot. to Stay, at 9.

On March 14, nearly two months after AT&T provided notice of the arbitrations, one month after AT&T filed its Reply, and just one week before the upcoming hearing on AT&T's Motion to Stay, Ms. Starling filed "emergency" Motions seeking to enjoin AT&T's arbitration against her. Dkts. 82, 84. The Court ordered AT&T to respond by March 20 and scheduled the Motions to be heard along with AT&T's Motion to Stay at the March 21 hearing. Dkt. 75.

On March 18, after the Agreement's sixty-day Informal Resolution Period expired, AT&T filed its Demand for Arbitration with the American Arbitration Association (the "AAA") against Ms. Pinn and Ms. Starling. *See* Third Fisher Decl. ¶ 3; Ex. A; First Fisher Decl. ¶ 5.

**LEGAL STANDARD**

To succeed on her Motions, Ms. Starling must demonstrate that she "is likely to succeed on the merits, that [s]he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in h[er] favor, and that an injunction is in the public interest." *Allstate Ins. Co. v. OneBeacon Am. Ins. Co.*, 989 F. Supp. 2d 143, 146 (D. Mass. 2013) (quoting *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 32 (1st Cir. 2011)). "The first two factors of the traditional standard are the most critical." *Foss v. Spencer Brewery*, No. CV 4:19-40098-TSH, 2019 WL 6223205 (D. Mass. Nov. 20, 2019) (quoting *Nken v. Holder*,

556 U.S. 418, 434 (2009)). "[A] preliminary injunction is an extraordinary and drastic remedy," and it "is never awarded as of right." *Allstate Ins. Co.*, 989 F. Supp. 2d at 147 (quoting *Voice of the Arab World*, 645 F.3d at 32). Where, as here, an arbitration agreement is subject to the Federal Arbitration Act (the "FAA"), "[a]ny analysis of a party's challenge to the enforcement of [the] arbitration agreement must begin by recognizing the FAA's strong policy in favor of rigorously enforcing arbitration agreements." *KKW Enterprises, Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp.*, 184 F.3d 42, 49 (1st Cir. 1999) (citation omitted).

## ARGUMENT

The Court should deny Ms. Starling's Motions for three reasons. First, Ms. Starling is not likely to succeed on the merits because she is equitably estopped from avoiding arbitration under the Agreement that she exploited to create this lawsuit. Second, Ms. Starling will not suffer irreparable harm by arbitrating against AT&T. And third, neither the balance of hardships factor nor the public interest factor weighs in favor of enjoining the arbitration.

### I. Ms. Starling is equitably estopped from avoiding arbitration under the Agreement that she exploited to create this lawsuit.

"Although it is only the first of four factors, the likelihood of success on the merits inquiry is the test's '*sine qua non*.'" *Allstate Ins. Co.*, 989 F. Supp. 2d at 147 (quoting *Weaver v. Henderson*, 984 F.2d 11, 12 (1st Cir. 1993)). Plaintiff's Motions largely incorporate by reference Ms. Starling's Response to AT&T's Motion to Stay. *See* Pl.'s Mem. ISO Injunction Mot., at 2, 5–6; Pl.'s TRO Mot., at 5. For the reasons more fully explained in AT&T's Motion to Stay and Reply, equitable estoppel principles require Ms. Starling to arbitrate AT&T's and her own claims. *See* AT&T's Mem. ISO Mot. to Stay, at 8–9; AT&T's Reply, at 4–9.

As detailed in AT&T's previous filings, Ms. Starling exploited Ms. Pinn's AT&T account to manufacture an illegitimate TCPA claim against AT&T. Ms. Starling cannot both

benefit from her sister's AT&T account (by using AT&T's processes to receive a call, identify the caller, and create her illegitimate TCPA claim) and avoid the arbitration clause in AT&T's Agreement governing that account. Courts in the First Circuit frequently find nonsignatories to be bound by arbitration provisions under similar circumstances. *See, e.g.*, *Ribadeneira v. New Balance Athletics, Inc.*, 65 F.4th 1, 27 (1st Cir. 2023) (estopping nonsignatory "from asserting his nonsignatory status to avoid the obligation to arbitrate under [a contract's arbitration] clause" because his claim was "predicated on" that contract); *Fluehmann v. Assocs. Fin. Servs.*, CIV.A. 01-40076-NMG, 2002 WL 500564, at *7 (D. Mass. Mar. 29, 2002) (estopping nonsignatory from avoiding arbitration because the contract "g[a]ve [nonsignatory] a cause of action").[3] Because Ms. Starling's TCPA claim would not exist but for Ms. Starling's and her sister's exploitation of the Agreement between Ms. Pinn and AT&T and AT&T's processes under that Agreement, Ms. Starling should be estopped from avoiding the Agreement's arbitration clause.[4]

Ms. Starling's Motions repeat her incorrect argument that the Order denying OnProcess's motion to compel arbitration based on (nonsignatory) OnProcess's agency argument forecloses

---

[3] *See also, e.g.*, *United States v. Ernst Jacob*, CV 21-1594 (GMM), 2023 WL 6294254, at *9 (D.P.R. Sept. 26, 2023) (holding nonsignatory "exploited the . . . Contract in a manner that merits recharacterizing it as a party that can be bound to the [contract's] arbitration term" because nonsignatory's claims were "dependent upon" that contract); *Johnson v. Polaris Sales, Inc.*, 257 F. Supp. 2d 300, 307 (D. Me. 2003) (holding nonsignatories were bound to arbitrate under equitable estoppel theory because they enjoyed the contract's benefits and based their action upon those benefits).

[4] *See also, e.g.*, *Bridge v. Credit One Fin.*, No. 2:14-CV-1512-LDG-NJK, 2016 WL 1298712, at *3 (D. Nev. Mar. 31, 2016) (nonsignatory plaintiff bound to arbitrate TCPA claim because "[t]he application of the [cell phone number identification] technology upon which [plaintiff] bases his claims derives from cardmember agreements between customers and [defendant], which agreements also contain the arbitration clause"); *Thomas v. Progressive Leasing*, No. CV RDB-17-1249, 2017 WL 4805235, at *4 (D. Md. Oct. 25, 2017) (nonsignatory TCPA plaintiff bound to arbitrate because his "allegations [regarding defendant's receipt of his phone number in the first place] arise from and relate directly to the duties imposed on [defendant under its contract with the signatory]").

(signatory) AT&T from claiming Ms. Starling must arbitrate against AT&T. *See* Pl.'s Mem. ISO Injunction Mot. (Dkt. 83) ("Pl.'s Mem. ISO Injunction Mot."), at 5–6; Pl.'s TRO Mot., at 1, 5. But AT&T's Reply already explained why the Court is not bound by that decision in ruling on AT&T's Motion to Stay. Reply ISO Mot. to Stay, at 7–9. Ms. Starling's Motions completely ignore the arguments and authorities cited in AT&T's Reply that was filed a month ago. *See* Motions. As AT&T explained, neither *stare decisis* nor the law of the case doctrine applies here because the Court's prior Order was not a "final judgment" and did not address whether Ms. Starling should be required to arbitrate with a signatory based on equitable estoppel principles. *Id.* at 7–8. Nor did AT&T waive its right to seek arbitration by failing to intervene when nonsignatory OnProcess moved to compel arbitration against Ms. Starling. *Id.* at 8–9.

Thus, Ms. Starling is not likely to succeed on her argument that she is not bound to the Agreement's arbitration provisions. Her failure to satisfy this factor warrants denial of her Motions.

## II.     Ms. Starling will not suffer irreparable harm in the absence of an injunction against the arbitration.

"Plaintiffs seeking injunctive relief must make a 'clear showing' that substantial and immediate irreparable harm is 'likely' in the absence of an injunction." *Oxford Immunotec Ltd. v. Qiagen, Inc.*, 271 F. Supp. 3d 358, 367 (D. Mass. 2017) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). As AT&T explained in its Reply, "litigation expenses 'do[ ] not constitute irreparable injury,' no matter how substantial they are." *Foss*, 2019 WL 6223205, at *1 (citing *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974) and *Tejidos de Coamo, Inc. v. Int'l Ladies' Garment Workers' Union*, 22 F.3d 8, 14 (1st Cir. 1994)). "If [Ms. Starling's] concern is with relief that the arbitrator might order, the short answer is that the award is not self-executing." *Tejidos de Coamo, Inc.*, 22 F.3d at 14. The remedy for such an

award "clearly exists in the form of a post-award challenge to the arbitration proceeding itself." *Allstate Ins. Co.*, 989 F. Supp. 2d at 149 (citation omitted).

Courts repeatedly recognize that participation in arbitration does not constitute an "irreparable injury" for purposes of a preliminary injunction, even where a party claims it is not subject to the arbitration agreement in the first place. In *Tejidos de Coamo*, the First Circuit reversed an injunction of an arbitration where plaintiff argued the contract containing the arbitration agreement had expired, which would have "strip[ped] the arbitrator of power" with respect to the relevant disputes. 22 F.3d at 9–10. The Court found "no substantial and irreparable injury" would result from plaintiff's participation in the arbitration because "the award [would not be] self-executing," and, while it was "true that participating would cause one form of loss, namely, the time and expense of litigation before the arbitrator," such expenses did not warrant injunctive relief. *Id.* at 14–15. Other courts in the First Circuit agree. *See, e.g.*, *Foss*, 2019 WL 6223205, at *1 (denying defendant's motion to stay an arbitration proceeding—even though the "first, third, and fourth factors" for injunctive relief "weigh[ed] in Defendant's behavior" and "Defendant "w[ould] undoubtedly lose valuable time and resources litigating meritless claims before an arbitrator"—because "litigation expenses 'do[ ] not constitute irreparable injury'"); *Allstate Ins. Co.*, 989 F. Supp. 2d at 149–50 (denying petitioner's motion to enjoin arbitration because, "[a]lthough [petitioner] claim[ed] that no adequate legal remedy could compensate for being forced to participate in a 'fundamentally unfair arbitration,'" "such a legal remedy clearly exist[ed] in the form of a post-award challenge to the arbitration proceeding itself").[5]

---

[5] *See also, e.g.*, *Int'l Bhd. of Elec. Workers, AFL-CIO, Loc. Union No. 3 v. Charter Commc'ns, Inc.*, 277 F. Supp. 3d 356, 366 (E.D.N.Y. 2017) (denying motion to enjoin arbitration where movant did not "demonstrate by a clear showing that it would be harmed beyond repair if a court did not decide this dispute now by TRO rather than later" in post-arbitration action); *Valspar Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 81 F. Supp. 3d 729 (D. Minn. 2014)

Ms. Starling cites two First Circuit district court cases in support of her argument that she "would be irreparably harmed by being forced to participate in any arbitration with AT&T." Pl.'s TRO Mot., at 5–6 (citing *Vicor Corp. v. FII USA, Inc.*, No. 24-10060-LTS, 2024 WL 532612 (D. Mass Jan. 19, 2024), and *AT&T Mobility LLC v. Princi*, Civ. A. No. 11-11448-RWZ, 2011 WL 6012945 (D. Mass. Dec. 2, 2011); Pl.'s Mem. ISO Injunction Mot., at 6–7. In *Vicor Corp.*, the court enjoined defendants' attempt to arbitrate against the plaintiff in an overseas arbitral forum because the parties' contract indisputably "either provide[d] for arbitration in the United States or not at all," and in no event provided for arbitration before the overseas tribunal. 2024 WL 532612, at *1–2. Here, the Agreement requires domestic arbitration of all disputes and claims between parties subject to that Agreement. *See* Agreement § 1.3.2.1. The only dispute is whether Ms. Starling if bound by that unambiguously broad arbitration agreement—which she is, as explained above and in AT&T's incorporated briefing. *See supra* section I. And in *Princi*, AT&T successfully enjoined an effort by a law firm to coordinate the filing of more than 1,000 copycat arbitrations that effectively sought class relief in violation of the class action waiver in the applicable arbitration agreements. 2011 WL 6012945, at *1. No similar flouting of the arbitration process has occurred here; to the contrary, AT&T has complied with the Agreement to the letter.[6] Particularly where, as here, Ms. Starling will be a key participant in AT&T's arbitration against her sister in any event (*see infra* § III), the time and expense of arbitration does not constitute an irreparable injury for purposes of Ms. Starling's Motions.

---

(denying motion to enjoin arbitration because "the fact that an order to arbitrate imposes a cost, the cost of the arbitration" does not "show irreparable harm"—"[o]therwise every order to arbitrate would be deemed to create irreparable harm" (citations omitted)).

[6] Ms. Starling's non-binding cases from other jurisdictions are likewise inapposite. *See, e.g.*, *UBS Sec., LLC v. Voegeli*, 405 F. App'x 550, 552 (2d Cir. 2011) (affirming injunction where company had not proven customers entered any arbitration agreement whatsoever).

### III. Neither the balance of hardships factor nor the public interest factor weighs in favor of enjoining the arbitration from moving forward.

Finally, the remaining two factors—balance of hardships and public interest—also weigh in favor of denying Plaintiffs' Motions. Ms. Starling claims "AT&T will suffer no hardship" from the requested injunction because AT&T "would retain all legitimate dispute resolution mechanisms it enjoys." Pl.'s Mem. ISO Injunction Mot., at 7; *see also* Pl.'s TRO Mot., at 6. But the "balance of hardships" factor measures the "relevant equities" between the parties, *Allstate Ins. Co.*, 989 F. Supp. 2d at 150, and it would be inequitable to allow Ms. Starling, a serial TCPA plaintiff, to avoid the arbitration provision in the Agreement whose processes allowed her to manufacture her illegitimate claim against AT&T in the first place. Ms. Starling apparently hopes to avoid being a party to the arbitration against Ms. Pinn (even though she inevitably will be involved in that arbitration as a key witness and shares counsel with her sister) so that she can argue any arbitral award against Ms. Pinn is not binding upon her. *See* Pl.'s Opp. to AT&T's Mot. to Stay, at 17–18 ("To the extent an arbitrator, in an arbitration solely against Ms. Pinn, would fashion any award making findings or rulings as to Ms. Starling, a nonparty, it would exceed the arbitrator's power and would have no effect on this case."). This Court should refuse to allow Ms. Starling to game the system in this way.

Ms. Starling claims the public interest factor favors her because "[t]he public has a legitimate expectation that arbitration is a voluntary form of alternative dispute resolution." Pl.'s Memo. ISO Injunction Mot., at 7–8; Pl.'s TRO Mot., at 6. But Ms. Starling materially differs from other nonsignatories whom courts have insulated from arbitration—she is a serial TCPA plaintiff who purposely exploited her sister's AT&T account to manufacture the illegitimate TCPA claim in this lawsuit. AT&T's arbitration against Ms. Starling will discourage serial TCPA plaintiffs from taking advantage of underlying contracts. *See* Reply ISO Mot. to Stay, at

6–7. And allowing the arbitration to go forward also would promote the "emphatic federal policy in favor of arbitral dispute resolution." *Sec. Indus. Ass's v. Connolly*, 703 F. Supp. 146, 159 (D. Mass. 1988) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)), *aff'd,* 883 F.2d 1114 (1st Cir. 1989).

## CONCLUSION

For the forgoing reasons, the Court should deny Plaintiff's Motion for Preliminary Injunction and for Expedited Summary Determination and Permanent Injunction to Enjoin Defendant from Pursuing Arbitration (Dkt. 82) and Plaintiff's Motion for a Temporary Restraining Order (Dkt. 84).

Respectfully submitted,

/s/ *Daniel J. Cloherty*
Victoria L. Steinberg (BBO #666482)
vsteinberg@clohertysteinberg.com
Daniel J. Cloherty (BBO #565772)
dcloherty@clohertysteinberg.com
CLOHERTY & STEINBERG LLP
33 Arch Street, Suite 3150
Boston, MA 02110
Tel: 617-481-0160

John P. Jett*
jjett@ktslaw.com
Jeffrey H. Fisher*
jfisher@ktslaw.com
Ava J. Conger*
aconger@ktslaw.com
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309
Tel: 404-815-6500
Fax: 404-815-6555
*Admitted pro hac vice*

*Counsel for Defendant AT&T Services, Inc.*

Dated: March 20, 2024

**CERTIFICATE OF SERVICE**

  The undersigned hereby certifies that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 20, 2024.

             /s/ *Daniel J. Cloherty*
             Daniel J. Cloherty